IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES LONG, #55631, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: 1:07-CV-581-MHT |
| | ) |
| COMMANDER KEITH REED, SERGEANT | ) |
| CARL KIRKSEY, CO WILLIAM MOORE, | ) |
| CO ROBERT PETTIE, CO NICKY | ) |
| SEVERSON, and CO FRANCIS BERNHARD, | ) |
| | ) |
| Defendants. | ) |

## SPECIAL REPORT AND ANSWER

Come now defendants, **Commander Keith Reed, Sergeant Carl Kirksey, Corrections Officer William Moore, Corrections Officer Robert Pettie, Corrections Officer Nicky Severson and Corrections Officer Francis Bernhard,** in the above-styled cause and for Answer to plaintiff's Complaint, state as follows:

1.      As to Paragraph 1 of plaintiff's Complaint, defendants assert that at this time they are without personal knowledge or information sufficient to form a belief as to the truth of the averments.

2.      As to Paragraph 2 of plaintiff's Complaint, defendants assert that at this time they are without personal knowledge or information sufficient to form a belief as to the truth of the averments.

3.      As to Paragraph 3 of plaintiff's Complaint, defendants deny that the constitutional rights of plaintiff have been violated and demand strict proof thereof.

4.      As to Paragraph 4 of plaintiff's Complaint, defendants deny that plaintiff's constitutional rights have been violated at any time.

5.      As to Paragraph 5 of plaintiff's Complaint, defendants deny that plaintiff's Constitutional rights have been violated.  Defendant asserts that while in the Houston County Jail, plaintiff has never been wrongly deprived of a right protected by the United States Constitution and the court decisions interpretive thereof.  For more complete factual information regarding plaintiff's Complaint and defendants' response thereto, please refer to the **Affidavits of Commander Keith Reed, Sergeant Carl Kirksey, and Corrections Officer William Moore** (Exhibits "1", "2", and "3" respectively).

6.      As to Paragraph 6 of plaintiff's Complaint, defendants assert that the plaintiff is not entitled to any relief from this Court as there has been no violation, constitutional or otherwise.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

### FIRST DEFENSE

Plaintiff's Complaint and the claims therein, or alternatively portions thereof, fail to state a claim upon which relief can be granted.

### SECOND DEFENSE

Any allegations of plaintiff's Complaint not explicitly admitted herein are denied and strict proof is demanded to support such allegations.

**THIRD DEFENSE**

The plaintiff's Complaint alleges claims for declaratory and injunctive relief which said claims are now moot as the plaintiff is no longer incarcerated in the Houston County Jail. The plaintiff was taken into the State of Alabama prison system on or about June 27, 2007.

**FOURTH DEFENSE**

That the plaintiff's claims involve declaratory and injunctive relief. Because the plaintiff is no longer incarcerated in the Houston County Jail, said claims are moot and this case is due to be dismissed. *See* County of Los Angeles v. Davis, 440 U.S. 625 (1979); Cotterall v. Paul, 755 F.2d 777 (11th Cir. 1985).

**FIFTH DEFENSE**

Plaintiff is not entitled to any award of punitive damages should this Complaint be construed to request them.

**SIXTH DEFENSE**

Defendants are immune from punitive damages under *42 U.S.C. § 1983 and 42 U.S.C. § 1985.*

**SEVENTH DEFENSE**

Plaintiff is not entitled to any relief requested in the Complaint.

**EIGHTH DEFENSE**

There is no causal relation between the acts of the defendants and any injury or damage allegedly suffered by the plaintiff.

**NINTH DEFENSE**

Plaintiff's injuries and damages, if any, were a result or consequence of supervening,

independent or intervening conduct, events or acts by other persons or entities over whom defendants had no control or right of control.

## TENTH DEFENSE

Defendants affirmatively aver that all of their actions were taken in good faith. Plaintiff cannot recover based upon plaintiff's conclusory, unsupported, bareboned and vague allegations against defendants as they are unsupported by fact or law.

## ELEVENTH DEFENSE

The allegations contained in plaintiff's Complaint against the defendants, sued in their individual capacity, fail to comply with the heightened specificity requirement of Rule 8 in § 1983 cases against persons sued in their individual capacities. *See* Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992); Arnold v. Board of Educ. of Escambia County, 880 F.2d 305, 309 (11th Cir. 1989).

## TWELFTH DEFENSE

Defendants affirmatively deny any and all alleged claims by the plaintiff concerning his alleged deprivation of civil rights.

## THIRTEENTH DEFENSE

Should the plaintiff's Complaint be construed to state claims under Alabama law, all state claims against defendants in their official capacity are barred because the Eleventh Amendment to the United States Constitution prohibits federal courts from hearing state law claims against state officials under the Doctrine of Pendant Jurisdiction. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 117-121 (1984).

## FOURTEENTH DEFENSE

All federal claims against defendants in their official capacity are barred by the Eleventh Amendment of the United States Constitution. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 104 S. Ct. 900, 79 L.Ed., 2d 67 (1984).

## FIFTEENTH DEFENSE

In addition to defendants Eleventh Amendment argument, they further contend that they are not "persons" within the meaning of 42 U.S.C. § 1983. The plaintiff, by suing defendants in their official capacity, is seeking damages from the State of Alabama. Neither a state, nor its officials, as sued in their official capacities are "persons" under 42 U.S.C. § 1983. Will v. Michigan Dept. of State Police, 109 S.Ct. 2304, 2312 (1989) and Hafer v. Melo, 502 U.S. 21, 22-23 (1991).

## SIXTEENTH DEFENSE

Defendants assert the defense of qualified immunity. Further, defendants plead the privileges, qualified immunities, substantive immunities, state law immunities, absolute immunities, defenses and good faith immunities given to officers of the law, governmental entities or otherwise in the above styled cause. Defendants state that any action taken by them was made in good faith and in the performance of their duty as Deputy for the Sheriff of Houston County, Alabama or Corrections Officers.

## SEVENTEENTH DEFENSE

Defendants assert and plead the defense of substantive or state law immunity under the law of the State of Alabama.

### EIGHTEENTH DEFENSE

Defendants assert and plead sovereign immunity provided by Alabama Constitution 1901, Article I, §14.

### NINETEENTH DEFENSE

Defendants assert that the allegations within the Complaint and the facts as will be developed are insufficient to invoke the jurisdiction of this Court.

### TWENTIETH DEFENSE

Plaintiff's Complaint does not allege a violation of rights secured by the United States Constitution.

### TWENTY-FIRST DEFENSE

Defendants plead and assert the statutory immunity provided by Act of the Alabama Legislature, designated as *Act Number 94-640*, effective April 26, 1994, and Codified as *Ala. Code § 6-5-338,* which provides absolute immunity to all peace officers and governmental units.

### TWENTY-SECOND DEFENSE

That the plaintiff has failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act amendment to *42 U.S.C. § 1997e(a).* Specifically, plaintiff has filed this lawsuit against defendants who are state officers without first exhausting his administrative remedies by filing a claim with and proceeding before the Alabama State Board of Adjustments as required by *Ala. Code § 41-9-60;* and plaintiff has failed to pursue the administrative remedies available to him in the Houston County Jail by virtue of the grievances procedures provided to the inmates therein.

## TWENTY-THIRD DEFENSE

That the Prison Litigation Reform Act amendment to *42 U.S.C. §1997e(c)* mandates the dismissal of plaintiff's claims herein as this action is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks money damages from defendants who are entitled to immunity.

## TWENTY-FOURTH DEFENSE

That the plaintiff does not properly plead or otherwise specifically show a physical injury as required by *42 U.S.C. §1997e(e)* which provides that

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

## TWENTY-FIFTH DEFENSE

That the plaintiff failed to comply with *28 U.S.C. §1915* with respect to the requirements and limitations inmates must follow in filing in forma paupers actions in federal court.

## TWENTY-SIXTH DEFENSE

That, pursuant to *28 U.S.C. §1915(f)*, plaintiff be required to make payment for all court costs in this matter in the same manner as provided for filing fees in *28 U.S.C. §1915(a)(2)*.

## TWENTY-SEVENTH DEFENSE

Pursuant to *28 U.S.C. §1915A*, this court is requested to screen and dismiss this case, as soon as possible, either before or after docketing, as this case is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from defendants who are state officers entitled to immunity. These same standards are continued and provided for in *42 U.S.C. §1997e(c)*.

## TWENTY-EIGHTH DEFENSE

Defendants assert the affirmative defense of the contributory negligence of plaintiff.

## TWENTY-NINTH DEFENSE

Defendants assert the affirmative defense of the assumption of the risk by plaintiff.

## THIRTIETH DEFENSE

Defendants assert the truth as a defense in this case.

## THIRTY-FIRST DEFENSE

Defendants assert the affirmative defense of waiver which constitutes an avoidance or affirmative defense in this action.

## THIRTY-SECOND DEFENSE

Defendants deny that they breached a duty or obligation owed to the plaintiff.

## THIRTY-THIRD DEFENSE

Should the plaintiff's Complaint be construed to claim punitive damages, plaintiff's claims for punitive damages are barred by the provisions of *Ala. Code §§ 6-11-20, 6-11-21, 6-11-26 and 6-11-27.*

## THIRTY-FOURTH DEFENSE

Defendants are entitled to immunity under state law from any state law claims deemed to be asserted by the plaintiff.  *See* Ex parte Thomas J. Purvis (re: Ackers v. Mobile County, et al.) 689 So.2d 794 (Ala. 1996) and Alexander v. Hatfield, 652 So.2d 1142 (1994).

## THIRTY-FIFTH DEFENSE

With regard to any state law claims, Defendants assert absolute state law immunity with

regard to all state law claims asserted against them in their official and individual capacities. *See* Ex parte Jason Lowell Blankenship, 893 So.2d 303 (Ala. 2004) (Where the Alabama Supreme Court held that not only should the case involving state law claims have been dismissed by the trial court, but also that the court did not have "subject matter jurisdiction" to do anything but dismiss the case.)

### THIRTY-SIXTH DEFENSE

To the extent that plaintiff's claims are premised upon a *respondeat superior* theory, said claims are due to be dismissed because the plaintiff cannot recover for claims which are premised upon a *respondeat superior* theory. *See* White v. Birchfield, 582 So.2d 1085 (Ala. 1991); and Hardin v. Hayes, 957 F.2d 845 (11th Cir. 1992).

### THIRTY-SEVENTH DEFENSE

Plaintiff's Complaint does not contain sufficient allegations of an affirmative causal link between the defendants' alleged conduct and the alleged constitutional deprivation. *See* Hardin v. Hayes, 957 F.2d 845, 848 (11th Cir. 1992); and Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).

### THIRTY-EIGHTH DEFENSE

The plaintiff cannot recover against defendants in this case because Alabama law provides sufficient due process remedies for the allegations made by plaintiff herein and such remedies are constitutionally adequate.

### THIRTY-NINTH DEFENSE

Defendants assert that plaintiff's Complaint is frivolous and filed in bad faith solely for the purpose of harassment and intimidation and request this Court pursuant to *42 U.S.C. § 1988* to award

defendants reasonable attorneys fees and costs incurred in the defense of this case.

## FORTIETH DEFENSE

Defendants assert that the use of force in this case "must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993), as amended, 14 F.3d 583 (11th Cir. 1993).

## FORTY-FIRST DEFENSE

Defendants assert that the force used in this case was applied "'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'" Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002).

## FORTY-SECOND DEFENSE

Defendants assert that because of the plaintiff's actions the force used was proportionate to the need for that force, plaintiff's actions posed a significant threat of physical violence, the use of force was initiated only after the plaintiff's repeated refusals to comply with the verbal orders of multiple officers and the force used was reasonably proportionate to the need for force and did not inflict any injury. Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004).

## FORTY-THIRD DEFENSE

Defendants assert that not every injury inflicted by a prison or jail official constitutes a violation of the Eight Amendment. "Not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir.) cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Fed.2d 324 (1973).

## FORTY-FOURTH DEFENSE

Defendants assert that in such situations a jail's internal security is peculiarly a matter to be left to the discretion of jail administrators and should carry "special weight." Defendants further assert that as jail administrators, they should "be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Defendants contend that such deference should extend to the security measures taken in this case in response to the smuggling of and presence of contraband "just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. <u>Whitley v. Albers</u>, 475 U.S. 312, 322-323, 106 S.Ct. 1078, 1086 (1986).

## FORTY-FIFTH DEFENSE

Defendants assert that, the "force was applied in a good faith effort to maintain or restore discipline" and not maliciously and sadistically for the very purpose of causing harm.' <u>Hudson v. McMillian</u> 503 U.S. 1, 7, 112 S.Ct. 995, 999 (1992).

**Defendants respectfully request this court to treat this Special Report and Answer as Motion for Summary Judgment.**

<div style="margin-left:40%">

Respectfully submitted,

SHERRER, JONES & TERRY, P.C.

<u>s/Gary C. Sherrer</u>
GARY C. SHERRER, ATTORNEY FOR
THE ABOVE-REFERENCED DEFENDANTS
Alabama Attorney Code No. <u>SHE-016</u>

</div>

OF COUNSEL:

SHERRER, JONES & TERRY, P.C.
335 West Main Street
Dothan, Alabama 36301
(334) 678-0100

## CERTIFICATE OF SERVICE

I, Gary C. Sherrer, do hereby certify that I have served a copy of the foregoing upon James

Long, #169420, Bibb Correctional Facility, 565 Bibb Lane, Brent, Alabama 35034, by placing a

copy of same in the United States Mail, postage prepaid and properly addressed on this the 31st day

of August, 2007.

                              **s/Gary C. Sherrer**
                              OF COUNSEL

---

**SPECIAL REPORT AND ANSWER**                                          **PAGE 12**

# AFFIDAVIT OF COMMANDER
# KEITH W. REED


# EXHIBIT 1

# TO SPECIAL REPORT AND ANSWER

### IN THE DISTRICT COURT OF THE UNITED STATES
### FOR THE MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **JAMES LONG, #55631,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO.: 1:07-CV-581-MHT** |
| | ) |
| **COMMANDER KEITH REED, SERGEANT** | ) |
| **CARL KIRKSEY, CO WILLIAM MOORE,** | ) |
| **CO ROBERT PETTIE, CO NICKY** | ) |
| **SEVERSON, and CO FRANCIS BERNHARD,** | ) |
| | ) |
| **Defendants.** | ) |

### AFFIDAVIT

STATE OF ALABAMA,

HOUSTON COUNTY.

Before me, the undersigned authority for administering oaths, personally appeared **Keith W. Reed** of the Houston County Sheriff's Department, who is the Commander-Jail Operations for the Houston County Sheriff, Houston County, Alabama, who being by me first duly sworn, deposes and says as follows:

I am Keith W. Reed and I am the Commander-Jail Operations of the Houston County Jail, Houston County, Alabama and have been employed by the Houston County Sheriff since March of 2007. My principal duties involve the administration of the Houston County Jail. Unless otherwise indicated herein, I have personal knowledge of the facts and information contained herein. I make

---



EXHIBIT
1

this affidavit after review of the plaintiff's jail inmate file and the subject matter of plaintiff's Complaint in an attempt to address plaintiff's claims in this case.

The Houston County Jail, as a part of the Inmate Rules and Regulations, provides for an inmate Grievance Procedure. According to plaintiff's inmate file, the plaintiff has filed several grievances and has filed a grievance related to the factual situation made the basis of plaintiff's complaint while in the Houston County Jail. A true and correct copy as kept in the ordinary course of the operation of the Houston County Jail of the Inmate Rules of the Houston County Jail which contain the inmate instructions on filing a grievance are attached hereto as **Exhibit A** and are incorporated herein by reference as if fully set forth. A true and correct copy as kept in the ordinary course of the operation of the Houston County Jail of Policy Number E-301 of the Houston County Jail Policy and Procedure Directive relating to Inmate Rules and Regulations is attached hereto as **Exhibit B** and is incorporated herein by reference as if fully set forth. A true and correct copy as kept in the ordinary course of the operation of the Houston County Jail of Policy Number E-302 of the Houston County Jail Policy and Procedure Directive relating to Receipt of Inmate Rules and Regulations is attached hereto as **Exhibit C** and is incorporated herein by reference as if fully set forth. A true and correct copy as kept in the ordinary course of the operation of the Houston County Jail of the plaintiff's Jail Docket Card showing that the plaintiff received a copy of the Inmate Rules is attached hereto collectively as **Exhibit D**, and is incorporated herein by reference as if fully set forth. A true and correct copy as kept in the ordinary course of the operation of the Houston County Jail of an Inmate Grievance Form available to and as provided to inmates is attached hereto as **Exhibit E**, and is incorporated herein by reference as if fully set forth. A true and correct copy as

kept in the ordinary course of the operation of the Houston County Jail of Policy Number E-401 of the Houston County Jail Policy and Procedure Directive relating to Inmate Grievances is attached hereto as **Exhibit F** and is incorporated herein by reference as if fully set forth.

In addition to funding three full time nurse positions, a full time Certified Physicians Assistant, a doctor contracted as the staff doctor and a registered supervising pharmacist for the provision of medical care to inmates such as the plaintiff, the County Jail provides a general medical clinic for medical problems that may arise in the jail. The medical clinic is held daily, Monday through Friday. The clinic is staffed by the staff physician and/or the Certified Physicians Assistant under the supervision of the physician. The nurses are in the Pods each day passing out inmate medications as well. Thus, inmates are given daily access to nursing services, hospital emergency room services, if necessary, and the general medical clinic. In addition, the doctor or physicians assistant is on call nightly and on weekends so there is generally medical treatment available "on call" to the jail on a 24 hour a day, seven days a week, basis.

It is the policy of the Houston County Jail that all requests for medical treatment are forwarded to the jail medical staff with the expectation that appropriate and necessary medical treatment will be provided to or obtained for the inmate.

On April 17, 2007 at approximately 5:00 p.m., I was contacted over the intercom by Sergeant Kirksey. Sergeant Kirksey said they had an inmate who required a body cavity search for contraband and the inmate was refusing to consent to the search. I met with Sergeant Kirksey and he told me they had reason to believe inmate Long had inserted up to two packages of tobacco wrapped in parts of a plastic glove into his rectum. The jail has had problems in the past with inmate

Long possessing contraband.

Earlier in the day inmate Shelley admitted that he had received several packages of tobacco in a pair of shoes brought into the jail by inmate Long's girlfriend. Corrections officer Gaff had also received reliable information from several other inmates about the tobacco received by inmate Shelley. Officer Gaff recovered two packages of tobacco from inmate Shelley. Inmate Shelley and other inmates told Officer Gaff that two packages of tobacco had already been given to inmate Long.

At least one inmate had, independently of those talking to Officer Gaff, reportedly told Sergeant Kirksey that inmate Long had concealed two latex gloves containing tobacco in his rectum. Sergeant Kirksey and I went to room 1041 where inmate Long had been placed during the search of his cell. Inmate Long was wearing a yellow medical gown and flip flops. While I was in close contact with inmate Long, I noticed he smelled strongly of cigarette smoke. He also had fresh nicotine residue on his fingers. I asked inmate Long what was going on and he told me he was refusing the body cavity search. I told inmate Long that we had probable cause to believe he had concealed contraband in his body cavity and we were going to take reasonable steps to recover the contraband. I told inmate Long it would be easier if he surrendered the contraband otherwise we would move forward with the process of having the jail medical staff conduct a body cavity search. Inmate Long said he was not going to be searched. I instructed Sergeant Kirksey to move forward with the procedure.

Sergeant Kirksey got Corrections Officer Moore to come over and handcuff the inmate. Officer Moore had no handcuffs with him so he used Sergeant Kirksey's. Inmate Long followed the instructions of Officer Moore to stand, turn around, place his hands behind his back, and inmate

Long was handcuffed without incident. Officer Severson arrived at room 1041 and inmate Long was walked to the jail medical clinic in order for one of the nurses to perform the necessary body cavity search. Inmate Long was repeatedly given the opportunity to produce the contraband but refused. He was taken into an exam room, where Officer Pettie joined us. No other inmates were present in the medical clinic. Inmate Long was bent over onto an exam bed but was not in any way "ruffed up [sic]" as inmate Long claims. When inmate Long was bent over onto the examination bed he was still in handcuffs. Sergeant Kirksey held inmate Long's left arm and shoulder and Officer Pettie held inmate Long's right arm and shoulder in order to keep inmate Long on the examination bed. Officer Severson held inmate Long's left leg and Officer Moore interlocked his leg with inmate Long's right leg in order to hold the inmate in place for the nurse to perform the search. No other parts of the inmate's body were touched by any corrections officer. Nurse Neiswanger was very clinical and professional in the way she performed the body cavity search of inmate Long and she used only her index finger to do so. She said she could feel a plastic covered mass in his rectum but was unable to retrieve it. Nurse Neiswanger said she felt no stool during her examination and that there was no stool on her glove which also indicated the presence of a foreign mass obstructing the anal passage.

At no time during the entire process was inmate Long struck or touched inappropriately in any way. There were no inappropriate comments made by any of the officers present. Sergeant Kirksey never touched inmate Long in the buttock or rectal area. No one "played" and no one said anything about a 2x4 or otherwise "joked" during this process. No one hit or elbowed inmate Long in the face or otherwise during this process. All persons present acted professionally during this unpleasant but necessary process.

When the nurse left the room, inmate Long said he would give up the contraband. Thereafter, inmate Long was taken into the central area of medical clinic and the nurse asked him if he could pass the contraband and inmate Long said yes. The inmate was placed on the toilet in the second exam room. After a couple of minutes the inmate reported that he could not pass the contraband. The nurse asked inmate Long if he wanted an enema and he said yes, he would try. The nurse administered the enema using a prepackaged and prelubricated Fleets enema. After the enema, the inmate sat back on the toilet. After a few minutes all inmate Long appeared to pass was the enema fluid. After that, I left the medical clinic and told Sergeant Kirksey to let me know when inmate Long had passed the contraband.

The following information is reported as part of my investigation into the events that followed.

Inmate Long was later taken back to room 1041 and given a bedpan because he had not passed the contraband and officers could not continue to stay with him. The bedpan was emptied twice. Once it contained mostly urine with some tobacco flakes. The second time it was emptied, the bedpan contained some stool and tobacco flakes. There was never any blood in the bedpan at any time. Nurse Neiswanger told me that she believe the enema may have partially ruptured the partial glove wrapping on the tobacco which accounts for the tobacco flakes in the bedpan. She also expressed her belief, based on what she saw, that inmate Long must have passed the contraband but reinserted it into his rectum. Her belief is supported by the fact that Sergeant Kirksey said that when inmate Long was taken back to his cell from room 1041, inmate Long had feces on his hands.

Later, I was told by inmate Long's sister that he had called her and said he had been raped

by officers, had broken teeth, had torn ligaments and had rectal bleeding.

I checked with Nurse Kennedy, who was on duty at the time, and she said she had observed inmate Long in the infirmary after the body cavity search. She reported that inmate Long had no broken teeth, no lip damage and no damage to gums in his mouth. Nurse Kennedy said that inmate Long did have some red marks on his wrist, but that they looked to her like he had recently done that to himself. She reported that inmate Long did complain about having rectal bleeding but upon examination no objective evidence of same was observed. Nurse Neiswanger said she saw inmate Long several times during the evening of April 17, 2007 and she did not observe any type of injury or bleeding and inmate Long made no complaint of any.

The following day, April 18, 2007, inmate Long was seen in the jail medical clinic complaining of an allergic reaction. Inmate Long also again complained of blood in his stool and of joint soreness. Upon examination, the nurse prepared a full body diagram and mouth diagram finding only some redness around his wrists which appeared to be self inflicted. Inmate Long was very agitated, used profanity and was verbally abusive to the jail medical staff. As a matter of caution, inmate Long was given a stool sample container to provide the medical staff with a stool sample but the sample container was never returned to the medical staff by inmate Long.

On Thursday, April 19, 2007, inmate Long was seen in the jail medical clinic by Dr. Banner and made no complaint of pain and gave no other indication of physical discomfort. Upon examination, Dr. Banner noted the presence of a few red bumps on inmate Long's leg but reported that they appeared to be heat related rather than a true allergic reaction. Inmate Long blamed all of his problems on the staff of the jail, complained that there was a conspiracy against him in the jail

and said that he would not see Nurse Neiswanger again. Dr. Banner informed inmate Long that he would be seen by the jail medical staff, including Nurse Neiswanger, based on their availability. Dr. Banner reported that when he would not agree with inmate Long, inmate Long became angry and verbally abusive. At that point, inmate Long was returned to his cell.

Officer Pettie is no longer employed at the Houston County Jail. He accepted a supervisory position with a prison in Florida. According to my investigation, the information known by Officer Pettie is cumulative of the information contained in the other affidavits provided.

Officer Bernhard was not personally involved in any of the events made the basis of Plaintiff's complaint.

Officer Severson is no longer employed at the Houston County Jail. I do not know where he is employed. According to my investigation, the information known by Officer Severson is cumulative of the information contained in the other affidavits provided.

KEITH W. REED

STATE OF ALABAMA,

HOUSTON COUNTY.

Before me, the undersigned authority, personally appeared **Keith W. Reed** , who being sworn by me according to law, deposes and states that the matters and things alleged in the above Affidavit are true and correct to the best of his information, knowledge and belief.

Sworn to and subscribed before me on this the 31st day of August, 2007.

_____
NOTARY PUBLIC
My Commission Expires:     12-9-08

# INMATE RULES OF THE HOUSTON COUNTY JAIL

# EXHIBIT A

# TO AFFIDAVIT OF COMMANDER KEITH W. REED

# HOUSTON COUNTY SHERIFF'S DEPARTMENT
## JAIL DIVISON
### LAMAR GLOVER, SHERIFF

### INMATE RULES

Order is essential to the safe and secure operation of the jail. Inmate Rules describe the expected behavior of all inmates. Inmates found in violation of rules will be subject to disciplinary action or criminal action depending on the type of violation. Some rule violations will subject the inmate, if found guilty, to sanctions or restriction of privileges. All inmates found guilty of rule violations have a right to appeal. Appeals must be submitted within 24 hours after receiving the sanction or restriction.

### RULES

1. Uniforms (jump suits) will be worn at all times when an inmate is outside his/her cell. The uniform must be worn with the wording **"Houston County Jail"** on the outside, and the uniform must be buttoned completely. While in the recreation area, inmates may wear the uniform top down around their waist, but they must be wearing a T-shirt. However, females must wear a bra under their T-shirts. No bare skin will be exposed.

2. No foreign objects will be placed in the jail doors to keep the door open or prevent locking. All inmates housed in a cell will be required to keep the cell clean and free of debris.

3. No paper products or any other type product will be placed over cell windows, vents, doors, cell lights or on walls.

4 No inmate will behave in any manner that is disrespectful to any Sheriff's Department personnel, visitors, or other inmates.

5. No inmate will initiate any physical contact, assault or attempt to assault, nor perform any act that will endanger any Sheriff's Department personnel, or any other officer, inmate or visitor.

6. No inmate will waste, abuse, damage, or steal county property or personal property belonging to another inmate.

7. No inmate will incite any action that will threaten the safety or order of the jail.

8. No inmate will commit any lewd or indecent sexual act or exhibitions.

901 East Main Street • Dothan, AL 36301
(334) 712-0762 • Fax (334) 671-9479


EXHIBIT
A

9.   No inmate will possess or attempt to possess contraband either on his/her person, cell, or under his/her control to include testing positive for drugs or alcohol.

10.   Inmates must maintain their cells and common areas in a clean, sanitary, and orderly condition.

11.   No inmate will interfere with Sheriff's Department personnel, nor disobey an order or instructions given by Sheriff's Department personnel.

12.   No inmate will leave his/her authorized area.  Inmates must roll-in to their cells when told to do so.  Females must be seated on their bunk.

13.   Inmates must roll-in at all roll-in times.  Inmates assigned to day room access must be on their mattress at all roll-ins.

14.   No inmate will be allowed to wear a cap, scarf, hat, headrag, etc., or anything covering their hair or head.

15.   No inmate will touch or place any item on the sprinkler head in their cell.

16.   Inmates will not press the call buttons except in case of emergency.

17.   No inmate will pass any item from one pod to another.

18.   Inmates **must** wear identification arm band at all times.

### DAILY SCHEDULE

1.   Roll In/Roll Out times will be posted in the pod.

2.   Inmates will roll-in at shift change times for inmate count and any other time when called by the officers.

3.   Showers will be taken during the following hours:  1:00 P.M. - 2:30 P.M. and 3:30 P.M. - 8:30 P.M.

4.   Religious services will be held on nights scheduled by the Jail Commander.

5.   Meals will be served beginning at approximately the following times:   **Breakfast - 5:00 A.M.**
              **Lunch - 11:00 A.M.**
              **Supper - 5:00 P.M.**

Each inmate is responsible for getting their own tray.  Cups **will** be taken up after the supper meal and returned at the breakfast meal.

2

## PERSONAL ITEMS ALLOWED

### A.  Items Issued

| | |
|---|---|
| Uniforms | Blanket |
| Mattress | Toothbrush |
| Mattress Cover | Comb |
| Laundry Bag | Soap |
| Towel | Toilet Paper |
| Bath Cloth | Toothpaste |

### B.  Clothing Allowed to be Brought Into the Facility

1. Undergarments, 6 pair, white only
2. Socks, white only, 6 pair
3. T-shirts, (6) white only (no tank-tops or pockets)
4. Sweatshirt, or thermal underwear, 1 each, elastic waistband, no pockets
5. Shower shoes, 1 pair
6. Tennis shoes, 1 pair, no shoestrings.  No boots, clogs or sandals - must be new
7. Bras, 3, white, no underwire

### C.  Hygiene Products Allowed
####      (One Each)

1. Stick deodorant
2. Bar soap (no liquid soap)
3. Shampoo (clear plastic bottle)
4. Hair grease/gel

All hygiene products must be the original container, clear plastic and must have see-through contents and original seal.  Never opened. (See Inmate Hygiene Policy page 10)

### D.  Other Items Allowed

1. Legal papers
2. Personal letters (Not to exceed 10 letters)
3. Soft-back Bible
4. 2 legal pads, letter size, no wire binding
5. 25 envelopes with stamps
6. 2 pencils, lead
7. 2 pens (non-retractable, non-metal point, see-through) (no crayons, colored pencils, highlighters or markers allowed)

### E.  Commissary Purchases

1. Weekend visitors whose name appears on an inmate's visitation list may deposit commissary money only into the inmate commissary fund of the inmate being visited.

2. Cash money and only correct amount will be accepted.

**Coins will not be accepted.**

3. Only certified checks or money orders will be accepted through the mail.

4. Inmate workers assigned to outside duties will only be allowed to contribute to inmate workers fund on Saturdays and Sundays. Each inmate is allowed $25.00 per week or $5.00 per day. (Inmates are not permitted to have money in the pods or on their person.)

### F. Acceptance of Personal Items

The personal clothing worn by an inmate at booking, along with other personal items that are not considered contraband, will be stored in the property room and given back to the inmate at release. **The inmate must sign a property return receipt at release or transfer time.** If considered contraband, i.e., cigarettes, lighters, it will be destroyed after 3 days if not picked up by family members.

### G. Television

The televisions are provided in the facility for the convenience and entertainment of the inmate. The floor officer may change channels when he/she deems necessary. The television may be turned off or removed for disciplinary reasons at the discretion of the floor officer.

### H. Cell Assignments and Institutional Living

The inmate's cell assignment is the responsibility of the Records and Classification Division. Inmates must return to their assigned cells at all roll-in times.

**When the inmate leaves his/her cell for the dayroom, the bed must be made up neatly.**

Personal items must be stored in the drawer underneath the bunk. Items will not be stored underneath the mattress. Inmates must not alter or destroy any lights, walls, fixtures, or plumbing located in a cell. Inmates assigned to cells without a drawer may place their items neatly at the foot of the bunk.

### J. Jail Library

Library books are available once a week at the discretion of the Sergeant assigned library duty. Inmates may check out a maximum of two books per week.

### K. Inmate Workers (Trustees)

1.   Requirements for inmate workers:

   a.   Inmate must be convicted.
   b.   Inmate must not have a record of violence or
        sexual crimes or be a high risk.
   c.   All inmates must be medically approved.
   d.   The Jail Commander must approve all inmate workers.
   e.   Inmate must not be convicted of manufacturing or
        trafficking in drugs.

2.   Rules of inmate workers:

   a.   Inmate workers must perform work duties as
        assigned.
   b.   Workers must remain in work areas assigned and may
        be searched at any time.
   c.   Outside workers must inform control of their duties
        and location at all times.
   d.   Inmate workers must not enter control room or
        jailer's booth unless escorted.

## L.   Recreational Activities

Basketball goals have been installed in the recreation
areas, and their use is determined by the Sergeant on duty,
weather permitting.

## M.   Telephone Calls

1.   Inmates will not receive any telephone calls, nor will
     any messages be forwarded for calls.

2.   Legitimate emergency messages will be handled by the
     supervisor on duty.

3.   The jail personnel will only give out the charge,
     amount of bond, or sentence regarding an inmate.

4.   Inmates may make collect calls using the inmate
     telephone system located in the dayroom.  These
     calls may be monitored or recorded.

5.   **Upon written request by inmate, the receptionist
     may call and leave a message for an attorney.**

6.   Inmates are not allowed to use a phone in the
     docket area except at the time of booking.

7.   Upon written request by an inmate, the docket officer
     will call a bonding company of the inmate's choice.

## N.   Visitor Information

1.   **The Houston County Jail is a non-contact visiting jail.**
     Only attorneys meeting in private conference with

5

inmate clients are allowed contact visits.

2. Inmates must complete a visitor list to see visitors. Visitors will not be allowed a visit if their name is not on the visiting cards, including children. Visiting list is restricted to only 8 names.

3. After 7 days, including entry day, the visitation list will not be changed, added to, or deleted, for a period of 60 days.

4. Visitors 16 years and older must present a current photo ID or driver's license before entry. Visitors under 16 years must have a social security card or a birth certificate, or be admitted at the discretion of the supervisor.

5. Only two (2) people, including children, will be allowed to visit per inmate. Visitors must come and leave together. **Split visitation is not allowed.**

6. For cause, the supervision of the jail may refuse an inmate's visitation privileges.

7. Visitor cards will be held by the visitation officer in the lobby. Times will be noted on the card.

8. Weekday visitation may be approved if **proper identification and proof of residency is presented. Weekday visits will only be approved if the visitor shows proof that their residence is a minimum of 100 miles from the Houston County Jail.** Out of town visits are for visitors who can not visit on regular visiting days and proof of the fact is presented. A visitor may not visit on the weekend and during the week day.

9. Inmates are not allowed visitors while serving time on lockdown or lock up time.

10. Visitors will be arrested and prosecuted for bringing or attempting to bring contraband into the jail.

11. Visitors will not wear mini skirts, shorts above the knee, halter tops, tank tops, spaghetti straps, strapless/slit dresses. No see-through clothing or low cut necklines will be worn. No visitor will wear any clothing that exposes the body to bare skin from the shoulders to the knees. Arms are excluded.

## VISITING SCHEDULE

SATURDAY:            8:00 AM to 10:30 AM
                     Pods M thru O, and female inmates,
                     trustees and weekend dorms

6

| | |
|---|---|
| SATURDAY: | 1:00 PM to 3:30 PM<br>Pods I, J, K, L, holding and Nursing |
| SUNDAY: | 8:00 AM to 10:30 AM<br>Pods A thru D |
| SUNDAY: | 1:00 PM to 3:30 PM<br>Pods E thru H |

## MAIL

1. Letters will be inspected for contraband to ensure facility safety.

2. No hand-delivered mail or packages will be accepted. Envelopes larger than 5X7 will not be accepted.

3. Inmates may receive money orders through regular mail. The money order must be made payable to: **Inmate Drawing Account,** and **must include the inmate's name and inmate number.**

4. **Mail received by the inmates will be documented, opened, and inspected before delivery to the inmate.** Legal mail received by the inmate will be opened by the officer in the presence of the inmate **but not read.**

5. Outgoing mail will be taken up each morning by the corrections officer. Incoming mail will be delivered to the inmate daily.

6. All incoming and outgoing mail must have the sender's **first** and **last name.** No nicknames will be accepted. The envelope must bear the sender's complete address.

EXAMPLE:  John Doe Pod A, B, C, D
901 East Main Street
Dothan, Alabama 36301

Jane Doe Pod Location
901 East Main Street
Dothan, Alabama 36301

## LAW LIBRARY

The facility has a constitutionally accepted law library for inmate use. The inmate must submit a request to the sergeant on duty to visit the library. The sergeant will arrange for use of the library by pod designation. Inmates cannot remove any book from the library. The facility does not provide a librarian.

## LIVING AREA REQUIREMENTS

A. Inmate towel and bath cloth must be hung on the foot of the bed and be centered. The towel will be hung first and the bath cloth hung neatly on the top of the towel.

B. Shoes will be placed underneath the right side of the bunk at the foot of the bunk with toes turned out.

C. The bunk will be neatly made.

D. Bunks will be in compliance from 8:00 AM to 9:00 PM Monday through Friday.

E. On Saturday and Sunday, bunks will be in compliance from 10:00 AM to 9:00 PM.

F. No items will be stored underneath the bunk except shoes. The inmate must keep his area clean and clear of litter.

G. No items of any kind will be placed or stored on the window sill of the cell.

## MEDICAL CARE

A. Inmates are charged a co-pay for medical care at the jail. Inmate medical care is **not** free. Alabama law dictates that inmate medical service is free when the inmates "are unable to provide for themselves," (Code of Alabama 14-6-19).

B. Inmate medical co-pay is taken from the inmate's commissary funds.

C. The inmate will be charged a co-pay for each medical visit and each medical service based on the following fees:

| | |
|---|---|
| Hospital Visit | $20.00 |
| Doctor Visit | $20.00 |
| Practioner Visit | $20.00 |
| LPN Visit | $ 5.00 |
| EMT Visit | $ 2.00 |
| Lab/X-Ray | $20.00 |
| Prescription (each) | $10.00 |
| Non-Prescription (each) | $ .50 |
| Dental visit | $20.00 |

D. Inmates who request medical clearance to perform trustee duties and then refuse to work will be charged $98.00, or actual cost, for their lab work.

E. Inmates are not allowed to ask questions during medication pass.

F. Med call is announced prior to the nurse arriving

8

in each area.  Any inmate not standing in line by
the door will forfeit their medication and be
noted as being absent.

## CHAPLAIN SERVICES

A.  The jail has a staff chaplain on part-time duty.
However, a 24-hour call is maintained for inmates
who request emergency service.

B.  Inmates **must** request chaplain service.  Inmate request
forms may be obtained from the corrections officer on
duty.

C.  Inmates who are members of an established religious
body may be visited by the clergy of the religious
body at times listed, Monday thru Friday, during the
hours:  9:00 A.M. - 11:00 A.M.
         1:00 P.M. - 2:30 P.M.
         3:30 P.M. - 4:30 P.M.
except during lock-up times or when the inmate is on
disciplinary lockdown.  At the discretion of the
supervisor on duty, inmates on disciplinary lockdown
may be visited by clergy.

D.  Clergy must show proof that they are ministers of
an established religious body of which the inmate
desiring a visit is a declared member and complete a
visitation form provided by the jail facility before
they are allowed visitation.  Ministers are required
to complete the visitation form only once.

E.  **Pastoral visits are discouraged on Saturdays and
Sundays due to weekend visitation except during
emergency situations.**

F.  Non-denominational services are held during the
evenings on Monday, Tuesday, and Thursday, of
each week.  Other services and classes are held
at the discretion of the chaplain.

G.  Attendance at religious services is not mandatory
for the inmate.  The privilege to attend religious
services may be revoked by the supervisor on duty
for misbehavior during the service or any violation
of the inmate rules.

H.  Clergy who have family members that are incarcerated
and a member of the clergy's religious body may visit
the inmate once as clergy.  The remaining visits will
be on regular visiting time assigned to the inmate.
Clergy will be any minister employed by the established
religious organization.

9

HOUSTON COUNTY JAIL
POLICY AND PROCEDURE DIRECTIVE

INMATE HYGIENE

Date Issued:  April 14, 2005
Date Effective:  April 24, 2005                    Policy Number: E-303
Revision Date:  April 25, 2005

## POLICY:

In order to promote the institutional goals of health, cleanliness, safety and security in the Houston County Jail, it is the policy of the Houston County Jail that except as may otherwise be specifically provided for herein, all inmates, male and female, shall adhere to this policy.  Male inmates shall have hair no longer than one inch from their scalp.  Additionally, female inmates shall have hair no longer than collar length.  There will be no special hairstyles permitted. Furthermore, there shall be no facial hair greater than one-quarter inch (1/4") in length and fingernails shall be clipped to the tip of the finger.  Each inmate shall shower daily; this includes shampooing the hair and a change in clothes.  Inmates in food service shall wear a clean set of whites daily.

## PROCEDURE:

During the initial booking process, inmates with a set bond, but who are otherwise incarcerated over night, are not subject to the haircut requirement, but they shall not refuse a bath using a delousing soap and shampoo if required by the jail staff.  Any inmate booked into the jail without a set bond shall have to comply with all requirements of this policy during the initial booking phase.

A schedule for compliance with this policy shall be set from time to time by the Jail Commander or Jail Administrator.

In the event an inmate wishes to have their haircut shorter, they must fill out an inmate request form and return it to the appropriate staff.

In an additional effort to prevent the spread of infection to other inmates and employees, every cell and holding area, including dayrooms, must be decontaminated using germicidal agents and steam cleaning the showers, floors and walls.  This procedure must be done a minimum of once a week for every space in the secure areas of the jail occupied by an inmate, including the docket. The mats used for sleeping must be sprayed with germicide **weekly**.

To ensure this policy is being followed, the ranking Sergeant will perform inspections as may be necessary.  Any inmate in non-compliance with this policy is to be reported to the Jail Commander or Jail Administrator and shall be subject to appropriate disciplinary action.

10

## GRIEVANCE PROCEDURE

01.     In the event that an inmate has a grievance, this inmate will send a grievance form to the Senior Corrections Officer, who will investigate and answer the grievance, and will settle this issue. If this is not possible, the Jail Commander may hold a formal hearing.

02.     The Senior Corrections Officer will hear all sides of the situation with a written statement or witnesses, as appropriate and render a decision. This inmate will be informed of the decision in writing. Actions taken will be documented.

# POLICY NUMBER E-301 RELATING TO INMATE RULES AND REGULATIONS

# EXHIBIT B

# TO AFFIDAVIT OF COMMANDER KEITH W. REED

Houston County Jail
Policy and Procedure Directive

# INMATE RULES AND REGULATIONS

Date Issued:  May 1, 1999

Policy Number: E-301

**POLICY:**

It is the policy of the Houston County Jail to advise inmates, in writing, of inmate rules and regulations.

**PROCEDURE:**

The jail will provide each inmate admitted to general population a copy of the inmate rules and regulations.

The inmate rules and regulations handout will be reviewed by the Jail Administrator and updated as necessary.

ACJS 13-001

**EXHIBIT** B

# POLICY NUMBER E-302 RELATING TO RECEIPT OF INMATE RULES AND REGULATIONS

# EXHIBIT C

# TO AFFIDAVIT OF COMMANDER KEITH W. REED

Houston County Jail
Policy and Procedure Directive

# RECEIPT OF INMATE RULES AND REGULATIONS

Date Issued:  May 1, 1999                                      Policy Number: E-302

**POLICY:**

It is the policy of the Houston County Jail to inform all new inmates of the inmate rules and regulations.

**PROCEDURE:**

Prior to any inmate being placed in a regular housing unit of the jail, the jail will provide the inmate with a copy of the inmate rules and regulations.

If the inmate is unable to read the inmate rules and regulations, a jail officer will read them to him/her and document the event.  In reading the rules and regulations, the staff member will explain each rule and regulation and answer any questions the inmate may have about the rules and regulations.

The jail officer will complete the Rules and Regulations Receipt form advising the inmate that he/she will be required to abide by those rules and regulations while an inmate in the Houston County Jail.

The inmate will then be required to sign the receipt form.  If inmate refuses, the process will be documented and procedure continued.

The receipt form will be placed in the inmate's file.

**EXHIBIT**          C

# PLAINTIFF'S JAIL DOCKET CARD


# EXHIBIT D

# TO AFFIDAVIT OF COMMANDER
# KEITH W. REED

# HOUSTON COUNTY JAIL
## JAIL DOCKET CARD

2100

| INMATE # | LAST NAME | FIRST | MIDDLE | MAIDEN | ALIAS | VICTIM NOTIFICATION |
|---|---|---|---|---|---|---|
| 55631 | Long | James | Melvin | | | |

| ARRESTING AGENCY | DATE RECEIVED | TEMP. RELEASE DATE | RETURN DATE | RELEASE DATE | HOW RELEASED |
|---|---|---|---|---|---|
| HCSD | 3-19-07 | | | | |

| RISK | STATUS | | FLOOR | CELL | DOCKET OFFICER | ARRESTING OFFICER |
|---|---|---|---|---|---|---|
| | State Inmate | | N | 5 | Smith/Hunter | Blair |

| AGE | DOB | SSN | RACE | SEX | HEIGHT | WEIGHT | HAIR | EYES | AGENCY HOUSED FOR |
|---|---|---|---|---|---|---|---|---|---|
| 34 | 5-7-72 | 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 | W | M | 5'9" | 187 | BN | Blu | |

| ENTRANCE NCIC/BY | ENTRANCE HOUSTON/BY | ENTRANCE DPD/BY | | FELONY CRIMINAL HISTORY/BY |
|---|---|---|---|---|
| Neg C-1 | Neg J25 | Neg | off Hagan | |

| EXIT NCIC/BY | EXIT HOUSTON/BY | EXIT DPD/BY | ATTORNEY |
|---|---|---|---|
| | | | John Steensland |

| HOLD 1 | DATE/BY | HOLD RELEASE DATE/BY | HOLD 2 | DATE/BY | HOLD RELEASE DATE/BY |
|---|---|---|---|---|---|
| H Coffee DHC CO | 6-14-07 JANE NAPPER | | | | |

| HOLD 3 | DATE/BY | HOLD RELEASE DATE/BY | HOLD 4 | DATE/BY | HOLD RELEASE DATE/BY |
|---|---|---|---|---|---|
| | | | | | |

| ADDRESS | CITY | STATE | PROBATION/PAROLE OFFICER |
|---|---|---|---|
| 1988 Co Rd 223 | Jack | AL 36346 | |

| NEXT OF KIN | ADDRESS | CITY/STATE | PHONE | RELATION |
|---|---|---|---|---|
| Mavis Long | Same | | (334) 897-1731 | Mother |

Religion Methodist

**REMARKS:**

| DID INMATE RECEIVE PHONE CALL? ( X )Y { }N | DID INMATE RECEIVE JAIL RULES? { X } { }N |
|---|---|
| INMATE SIGNATURE X James Long | INMATE SIGNATURE X James Long |

SOUTHEASTERN PRINTERS OF DOTHAN / FORM HCJDC 334-792-2928

EXHIBIT
D

| INMATE # | | | NAME | | | | |
|---|---|---|---|---|---|---|---|

| CHARGE Prob Viol - Escape II | | WARRANT # | DC/TR | INDICTMENT# | CC/CS/DR 06.41 | CONVICTION 12yr 5yrs |
|---|---|---|---|---|---|---|
| BOND Ø | | 04/29/07 @ 0900    05/18/07 Prob. Revoked | | | | |

| CHARGE Prob Viol - Domvid II | | WARRANT # | DC/TR | INDICTMENT# | CC/CS/DR 04.934 | CONVICTION 15yrs |
|---|---|---|---|---|---|---|
| BOND Ø | | | | | | |

| CHARGE | | WARRANT # | DC/TR | INDICTMENT# | CC/CS/DR | CONVICTION |
|---|---|---|---|---|---|---|
| BOND | | | | | | |

| CHARGE | | WARRANT # | DC/TR | INDICTMENT# | CC/CS/DR | CONVICTION |
|---|---|---|---|---|---|---|
| BOND | | | | | | |

| CHARGE | | WARRANT # | DC/TR | INDICTMENT# | CC/CS/DR | CONVICTION |
|---|---|---|---|---|---|---|
| BOND | | | | | | |

# INMATE GRIEVANCE FORM

# EXHIBIT E

# TO AFFIDAVIT OF COMMANDER KEITH W. REED

DATE:_____    INSTITUTION:_____

NAME:_____    INMATE NUMBER:_____

NATURE OF GRIEVANCE OR INFORMATION:

_____

_____

_____

_____

_____

WHAT DO YOU WANT TO HAPPEN TO SOLVE IT ?  _____

_____

_____

_____

_____

_____

DATE  HEARING:  _____

COMMITTEE FINDING OR RESPONSE:  _____

_____

_____

_____

REFERRED TO:_____    POSITION: _____

CHAIRMAN:_____    MEMBER:_____

MEMBER:  _____    WARDEN:_____

AGREE_____  DISAGREE:_____    (WITH COMMITTEE FINDINGS)

CHIEF WARDEN  RESPONSE:  _____

_____

_____

_____

_____

DATE GRIEVANCE FILED:_____    TIME FILED:_____

SHIFT COMMANDER·

**EXHIBIT**

**E**

# POLICY NUMBER E-401 RELATING TO INMATE GRIEVANCES

# EXHIBIT F

# TO AFFIDAVIT OF COMMANDER KEITH W. REED

Houston County Jail
Policy and Procedure Directive

# INMATE GRIEVANCES

Date Issued:  May 1, 1999                              Policy Number: E-401

## POLICY:

It is the policy of the Houston County Jail that inmates are permitted to submit grievances to the jail administration and that each grievance will receive a response.

## PROCEDURE:

The Jail Administrator will devise a grievance form to be made available to all inmates on request.  Grievance forms will be limited to one (1) per day per inmate.

Completed grievance forms will be delivered to the Jail Administrator through an appointed grievance officer, who will respond to the grievance.

The grievance response to the inmate will be in writing.

The decision of the Jail Administrator may be appealed to the Sheriff or designee, within seventy-two (72) hours of the receipt of the grievance decision.

**EXHIBIT**      F

# AFFIDAVIT OF SERGEANT CARL KIRKSEY

# EXHIBIT 2

# TO SPECIAL REPORT AND ANSWER

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES LONG, #55631, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: 1:07-CV-581-MHT |
| | ) |
| COMMANDER KEITH REED, SERGEANT | ) |
| CARL KIRKSEY, CO WILLIAM MOORE, | ) |
| CO ROBERT PETTIE, CO NICKY | ) |
| SEVERSON, and CO FRANCIS BERNHARD, | ) |
| | ) |
| **Defendants.** | ) |

## AFFIDAVIT

STATE OF ALABAMA,

HOUSTON COUNTY.

Before me, the undersigned authority for administering oaths, personally appeared **Carl Kirksey** who is a Corrections Officer serving as a Senior Corrections Officer with the Houston County Sheriff's Department, who being by me first duly sworn, deposes and says as follows:

My name is Carl Kirksey, and I am over the age of nineteen (19) years and a resident of Houston County, Alabama.

I am presently employed by Houston County Sheriff's Department as a Corrections Officer



EXHIBIT
2

serving as a Senior Corrections Officer with the Houston County Sheriff's Department and was so employed at all times material to this lawsuit. My principal duties involve the administration of the Houston County Jail. I have personal knowledge of the facts and information contained herein.

On April 17, 2004 while searching cell M-17, I was informed by another inmate that inmate Long had forced inmate Shelley to bring some tobacco into the jail inside the sole of his sneakers that were coming in today via inmate Long's girlfriend. Inmate Shelley got the shoes and he gave the tobacco to inmate Long but he was caught afterward when Corrections Officer Gaff went to inmate Long's cell and searched it. The search was conducted because inmates told Corrections Officer Gaff that there was tobacco in inmate Long's cell and because inmate Long's cell smelled of tobacco smoke. The search occurred after inmate Shelly gave some of the tobacco to Corrections Officer Gaff. Corrections Officer Gaff told inmate Shelley that the female that brought the shoes in to him may be charged with promoting prison contraband and then inmate Shelley told Corrections Officer Gaff that the female that brought the shoes to the jail was inmate Long's girlfriend. By the time inmate Long was searched, he had already hidden or gotten rid of the tobacco.

Another inmate then told me that inmate Long had concealed the tobacco in latex glove fingers and had then inserted it into his rectum. Corrections Officer Pettie and I then searched inmate Long's cell a second time and found tobacco residue behind the sprinkler head. Thereafter, I took inmate Long to the clinic and asked the nurse to do a body cavity search on inmate Long.

Inmate Long refused to voluntarily submit to a body cavity search by the nurse.

At that point, I returned inmate Long to room 1041 and contacted Commander Reed over the intercom. I reported to Commander Reed that we had an inmate who required a body cavity search for contraband and the inmate was refusing to consent to the search. Commander Reed met with me and I told him that we had reason to believe inmate Long had inserted up to two packages of tobacco wrapped in parts of a plastic glove into his rectum. The jail has had problems in the past with inmate Long obtaining and possessing contraband.

Earlier in the day, inmate Shelley admitted to Corrections Officer Gaff that he had received several packages of tobacco in a pair of shoes brought into the jail by inmate Long's girlfriend. Corrections Officer Gaff had also received reliable information from several other inmates about the tobacco received by inmate Shelley. Officer Gaff recovered two packages of tobacco from inmate Shelley. Inmate Shelley and other inmates told Officer Gaff that two packages of tobacco had already been given to inmate Long.      Another inmate told me that inmate Long had concealed two latex gloves fingers containing tobacco in his rectum.

Commander Reed and I went to room 1041 where inmate Long had been placed during the search of his cell. Inmate Long was wearing a yellow medical gown and flip flops. While I was in close contact with inmate Long, I noticed he smelled strongly of cigarette smoke. He also had fresh nicotine residue on his fingers. Commander Reed asked inmate Long what was going on and he told Commander Reed he was refusing the body cavity search. Commander Reed told inmate Long that we had probable cause to believe he had concealed contraband in his body and we were

CARL KIRKSEY - AFFIDAVIT                                                          PAGE 3

going to take reasonable steps to recover the contraband. The Commander also told inmate Long it would be easier if he surrendered the contraband otherwise we would move forward with the process of having the jail medical staff conduct a body cavity search. Inmate Long said he was not going to be searched. Commander Reed instructed me Kirksey to move forward with the procedure.

I contacted other officers to assist and asked Officer Moore to handcuff the inmate. Officer Moore had no handcuffs with him so he used mine. Inmate Long followed the instructions of Officer Moore to stand, turn around, place his hands behind his back, and inmate Long was handcuffed without incident. Officer Severson arrived at room 1041 and inmate Long was walked to the jail medical clinic in order for one of the nurses to perform the necessary body cavity search. He was taken into an exam room, where Officer Pettie joined us. Inmate Long was repeatedly given the opportunity to produce the contraband but refused. Ultimately inmate Long had to be physically bent over onto an examination bed but was not in any way "ruffed up [sic]" as inmate Long claims. When inmate Long was bent over onto the examination bed he was still in handcuffs. I held inmate Long's left arm and shoulder and Officer Pettie held the inmate's right arm and shoulder in order to keep inmate Long on the examination bed. Officer Severson held the inmate's left leg and Officer Moore interlocked his leg with the inmate's right leg in order to hold the inmate in place for the nurse to perform the search. No other parts of the inmate's body were touched by any corrections officer. Nurse Neiswanger was very clinical and professional in the way she performed the body cavity search of inmate Long and she used only her index finger to

---

CARL KIRKSEY - AFFIDAVIT                                                                PAGE 4

do so. She said she could feel a plastic covered mass in his rectum but was unable to reach it. Nurse Neiswanger said she felt no stool during her examination and that there was no stool on her glove which also indicated the presence of a foreign mass obstructing the anal passage.

At no time during the entire process was inmate Long struck or touched inappropriately in any way. There were no inappropriate comments made by any of the officers present. I never touched inmate Long in the buttock or rectal area. No one "played" and no one said anything about a 2x4 or otherwise "joked" during this process. No one hit or elbowed inmate Long in the face or otherwise during this process.    All persons present acted professionally during this unpleasant but necessary process.

When the nurse left the room inmate Long said he would give up the contraband. Thereafter, inmate Long was taken into the central area of the medical clinic and the nurse asked him if he could pass the contraband and inmate Long said yes. The inmate was placed on the toilet in the second exam room. After a couple of minutes the inmate reported that he could not pass the contraband. The nurse asked inmate Long if he wanted an enema and he said yes, he would try. The nurse administered the enema using a prepackaged and pre-lubricated Fleets enema. After the enema, the inmate sat back on the toilet. After a few minutes all inmate Long appeared to pass was the enema fluid. At that point Commander Reed left the medical clinic and told me to let him know when inmate Long passed the contraband.

Inmate Long was later taken back to room 1041 and given a bedpan because he had not passed the contraband and officers could not continue to stay with him. The bedpan was emptied

twice. Once it contained mostly urine with some tobacco flakes. The second time it was emptied, the bedpan contained some stool and tobacco flakes. There was never any blood in the bedpan at any time. When inmate Long was taken back to his cell from room 1041, inmate Long had feces on his hands.

_____
CARL KIRKSEY


STATE OF ALABAMA,

HOUSTON COUNTY.

Before me, the undersigned authority, personally appeared **Carl Kirksey**, who being sworn by me according to law, deposes and states that the matters and things alleged in the above Affidavit are true and correct to the best of his information, knowledge and belief.

Sworn to and subscribed before me on this the 31st day of August, 2007.

_____
NOTARY PUBLIC
My Commission Expires: 12-9-2008


**CARL KIRKSEY - AFFIDAVIT**                                                                 **PAGE 6**

G:\GCS\AFFIDAVITS\COUNTY\KIRKSEY\Long, James.wpd

# AFFIDAVIT OF CORRECTIONS OFFICER WILLIAM MOORE

# EXHIBIT 3

# TO SPECIAL REPORT AND ANSWER

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES LONG, #55631, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 1:07-CV-581-MHT |
| | ) | |
| COMMANDER KEITH REED, SERGEANT | ) | |
| CARL KIRKSEY, CO WILLIAM MOORE, | ) | |
| CO ROBERT PETTIE, CO NICKY | ) | |
| SEVERSON, and CO FRANCIS BERNHARD, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT

STATE OF ALABAMA,

HOUSTON COUNTY.

Before me, the undersigned authority for administering oaths, personally appeared **William Moore** who is a Corrections Officer with the Houston County Sheriff's Department, who being by me first duly sworn, deposes and says as follows:

My name is William Moore, and I am over the age of nineteen (19) years and a resident of Coffee County, Alabama.

I am presently employed by Houston County Sheriff's Department as a Corrections Officer with the Houston County Sheriff's Department and was so employed at all times material to this lawsuit. My principal duties involve the administration of the Houston County Jail. Unless

WILLIAM MOORE - AFFIDAVIT                                                    PAGE 1

EXHIBIT
3

otherwise indicted herein, expressly or by the context thereof, I have personal knowledge of the facts and information contained herein.

On April 17, 2007, I was contacted by Sergeant Kirksey to assist him with inmate Long. He asked me to handcuff inmate Long. I had no handcuffs with me so I used Sergeant Kirksey's. Inmate Long followed my instructions to stand, turn around, place his hands behind his back, and inmate Long was handcuffed without incident. Officer Severson arrived at room 1041 and inmate Long was walked to the jail medical clinic in order for one of the nurses to perform the necessary body cavity search. He was taken into an exam room, where Officer Pettie joined us. Inmate Long was repeatedly given the opportunity to produce the contraband but refused. Ultimately inmate Long had to be physically bent over onto an examination bed but was not in any way "ruffed up [sic]" as inmate Long claims. When inmate Long was bent over onto the examination bed he was still in handcuffs. Sergeant Kirksey held inmate Long's left arm and shoulder and Officer Pettie held the inmate's right arm and shoulder in order to keep inmate Long on the examination bed. Officer Severson held one of inmate Long's legs and I interlocked my leg with inmate Long's other leg in order to hold the inmate in place for the nurse to perform the search. No other parts of the inmate's body were touched by any corrections officer. Nurse Neiswanger was very clinical and professional in the way she performed the body cavity search of inmate Long and she used only her index finger to do so. She said she could feel a plastic covered mass in his rectum but was unable to reach it. Nurse Neiswanger said she felt no stool during her examination and that there was no stool on her glove which also indicated the presence of a foreign mass obstructing the anal passage.

At no time during the entire process was inmate Long struck or touched inappropriately in any way. There were no inappropriate comments made by any of the officers present. I never

WILLIAM MOORE - AFFIDAVIT                                    PAGE 2

touched inmate Long in the buttock or rectal area. No one "played" and no one said anything about a 2x4 or otherwise "joked" during this process. No one hit or elbowed inmate Long in the face or otherwise during this process. All persons present acted professionally during this unpleasant but necessary process.

When the nurse left the room inmate Long said he would give up the contraband. Thereafter, inmate Long was taken into the central area of the medical clinic and the nurse asked him if he could pass the contraband and inmate Long said yes. The inmate was placed on the toilet in a second exam room. After a couple of minutes the inmate reported that he could not pass the contraband. The nurse asked inmate Long if he wanted an enema and he said yes, he would try. The nurse administered the enema using a prepackaged and pre-lubricated Fleets enema. After the enema, the inmate sat back on the toilet. After a few minutes all inmate Long appeared to pass was the enema fluid. At that point Commander Reed left the medical clinic and told me to let him know when inmate Long passed the contraband.

Inmate Long was later taken back to room 1041 and given a bedpan because he had not passed the contraband and officers could not continue to stay with him. The bedpan was emptied twice. Once it contained mostly urine with some tobacco flakes. The second time it was emptied, the bedpan contained some stool and tobacco flakes. There was never any blood in the bedpan at any time. When inmate Long was taken back to his cell from room 1041, inmate Long had feces on his hands.

WILLIAM MOORE

STATE OF ALABAMA,

HOUSTON COUNTY.

Before me, the undersigned authority, personally appeared **William Moore**, who being sworn by me according to law, deposes and states that the matters and things alleged in the above Affidavit are true and correct to the best of his information, knowledge and belief.

Sworn to and subscribed before me on this the 31st day of August, 2007.

NOTARY PUBLIC

My Commission Expires:  12-9-2008